case number 23-1223 USA versus Teiun Walker. Argument is not to exceed 15 minutes per side. Ms. Muir for the appellant. You may proceed. Good morning Your Honors. May it please the Court, my name is Tessa Muir. I'm representing Teiun Walker and I've requested three minutes for rebuttal. Yes sir. Your Honors, this is a criminal case that raises issues of race, socioeconomic status, and policing tactics that use the most minor of city ordinances to effect sweeping multi-officer arrests under a very generalized suspicion of drugs and firearms. Mr. Walker, the defendant here, went to the convenience store next to his apartment building to buy shredded cheese for his steak and potato dinner on a Monday night, and he was arrested in a police sweep in the parking lot targeting a circle of dice throwers whom he did not know. A handgun was ultimately found in his bag, he moved to suppress it, and that suppression motion was denied. He now appeals. So there are three main issues here. One, was there probable cause to arrest Mr. Walker? Two, was there reasonable suspicion to terry-stop him? And a sub-part of that question is, was there a sufficiently particularized suspicion that he was armed and dangerous to justify the terry frisk? So there's two parts to that terry question, the stop and the frisk. And then the final issue is, would the police have inevitably discovered the firearm in his backpack, which they only discovered after they stopped him? Your client was on probation or parole at that time? He was on parole, your honor. Our position is that this was an arrest, and so the proper analysis is to go through the arrest probable cause determination. Let me ask you, before you go into that, was there reasonable suspicion to stop the defendant in this case? I'm not talking about to frisk, but just to stop. Do you think there's reasonable suspicion for that? We argue no, your honor. And why is that? The argument on the stop is that the cases require reasonable suspicion of criminal activity that has just occurred or is underfoot. We argue first and foremost that the court doesn't need to get to the terry stop analysis because this was so clearly an arrest. So I'll go back to that part later, but in answer to your honor's question, if the court does move to the terry stop analysis, the analysis is whether there was reasonable suspicion that Mr. Walker was engaged in criminal activity. And there are a couple of prongs to that. First, was there a proper basis for the stop, which was specific and articulable facts giving rise to reasonable suspicion? And was the degree of intrusion reasonable? That comes from United States v. Beauchamp. The terry stop was unreasonable here. There was not reasonable suspicion of criminal activity because the factors upon which the stop relied were ambiguous at best. Mr. Walker was in a parking lot that was crowded and open to the public. It was an open convenience store. It sells all sorts of things. There were customers, including children and other adults and many cars in the parking lot. Mr. Walker went in and out of the store, which is verified by a 920 p.m. receipt that he received for the shredded cheese. And when the officers descended upon the parking lot, they described it as chaotic and hectic, a discombobulated mess, one of them called it. But didn't at least one of the officers observe the defender interacting with some of the folks that were gambling? Yes, Your Honor. There was a fence that divided one of the officers from the parking lot. And that fence essentially also divided the two officers who are at issue here. On the far side of the fence was Sergeant Millard, who effectuated the arrest. On the other side of the fence was Officer Kitts, who effectuated what he believed to be a potential terry stop. So there's a literal fence between these two officers who have different views on what's going on. Officer Kitts was on the terry stop side of the fence. He arrived after any interaction between Mr. Walker and the circle of gamblers occurred. He testified he did not see any interaction between Mr. Walker and the circle of gamblers in terms of gambling. Was Officer Kitts operating on a direction from Sergeant Millard behind the fence to go grab Mr. Walker or grab someone in a jean jacket or something like that? Exactly, Your Honor. Exactly. So Sergeant Millard on the far side of the fence was the commanding officer. He was the senior most ranking person. In fact, although he was a sergeant, he was referred to as the acting lieutenant. He was clearly in charge of everyone at the scene. He created the tack channel to communicate about this operation. And he organized everybody to stage near the store so that when he said go, they went into the parking lot. Sergeant Millard testified under known certain circumstances that he observed several people gambling and he observed Mr. Walker, quote, lean in and lean out and move down. Those were his words. Lean in, lean out, and move down. This was contrary to what his report stated, which is cited in our original motion, where he cited that he saw Mr. Walker, among two others, holding money, gambling, and actively participating. That turned out not to be true. What Sergeant Millard actually saw, he was the only officer to observe through the slatted fence while he was getting everybody ready. And he observed Mr. Walker in the parking lot. He didn't know for how long. He couldn't say how briefly. He saw him in the area of the gamblers, but he didn't call out him by name on the radio. He simply observed him among the melee. But if he knew he'd been out on parole, would that change the situation? It would, Your Honor. It would change the situation. If they were looking for Mr. Walker and they were going to arrest him, or if they even knew who he was and they said, hey, let's get him while we're here. But that was not the facts of this case. They had no idea who he was other than jean jacket, man's satchel, which is how they described him, until after the arrest slash Terry Stout. The officer thought he was doing some sort of a gambling motion, right? The officer originally reported in his written report that Mr. Walker and two other subjects were observed with cash in their hands, bending down, making motions, indicating active participating, and directly involved in the gambling. Sounds like shooting dice, doesn't it? It does sound like shooting dice, which is the game that was occurring. However, by the time Sergeant Millard, that same officer who wrote the report, testified at the hearing, he said, this is on page ID 290 of the hearing transcript, I saw him actively leaning into the group, conversing with the individuals, and leaning back out. I didn't see him throw down any money or roll any dice. Did you say you saw him with some kind of a motion like he was shooting dice? No, no motion. He was not seen with dice, nobody alleged that he ever touched dice, or that he had any money, or that he put down any money, that he placed any bets. The only allegation... If he was leaning again, could that go to the aiding and abetting gambling? It could go to a theory of aiding and abetting the city ordinance of gambling, similar to, I guess, shouting at someone who's jaywalking, hurry up, go quickly. It's a very, very tenuous position if the government's going to hang its hat on aiding and abetting gambling, that Mr. Walker leaned in and leaned out. The fact that Mr. Walker actually said, roll it up, or shoot a ten, or something like that, was not a fact that was known to the officer at the time. That was a fact that was learned over a jail call later. And it corroborates that Mr. Walker had some interaction in terms of shouting at the gamblers in the parking lot, but that was a fact that was unknown at the time. But if I'm correct about the differences between what was in the written report and then what was actually testified to, the officer, this is Sergeant Moore, did see him converse with the gamblers and lean in and then move down. Yes, he said, I saw him actively leaning into the group, conversing with the individuals, and lean back out. And that Kalamazoo ordinance not just includes gambling of any kind, but also aiding and abetting, which even includes here counseling gambling activity. Could there be probable cause for that? Now, I may agree for you with your intro when you said this is the most minor of statutes, but we don't get to change the Kalamazoo ordinances. Certainly. This is the question, this is certainly the factual question for the court. Our position is that seeing what amounted to no more than a two-minute time span between when Mr. Walker purchased the cheese at 920 and when he's seen honest surveillance camera footage going to the Summit Park apartments and coming back, there was only six minutes altogether that Sergeant Moore was even peeking through the fence. And only a small portion of that Mr. Walker was in the parking lot. And it is, Sergeant Millard was sort of peddling back on his testimony about what he saw from Mr. Walker because he clarified, Sergeant Millard clarified that he was stepping away to call on the radio so that he wouldn't alert the noises, the people wouldn't be able to hear him. He was moving up and down the fence, he was trying to get a covert position, he was bending down. He could not say when he saw Mr. Walker. He didn't even observe that Mr. Walker came out of the store or that he went around the fence and that he came back. He didn't call out anything about Mr. Walker. So to hinge the entire arrest on him now saying at the hearing that he leaned in and conversed with the individuals when he didn't hear it, he couldn't describe it in any further detail, is tenuous. Is the criteria for stopping someone who's on parole or probation different from just the average person on the street? It is, Your Honor. But because the officers on site didn't know anything about Mr. Walker's parole Would they have to know about it? They would have to know about it in order for it to be relevant to them stopping him. They would have to know that he was on parole and say, hey, we're stopping you because you're on parole or we're searching you because you're on parole. But neither of those occurred here. The direction from Sergeant Millard was to arrest Mr. Walker and he shouted out to him multiple times Before Officer Kitts ever touched this bag, Sergeant Millard was shouting out to Mr. Walker You are under arrest. You're under arrest for gambling. And that's critical to the time sequence that wasn't quite clear in all the briefing and all the different videos. But Officer Kitts starts doing a pat down and Sergeant Millard, who's clearly in charge, yells over the fence You're under arrest. You're under arrest for gambling. Mr. Walker calls back, I wasn't gambling. Millard shouts back, yes you were. You're in custody for gambling. At which point Officer Kitts fills the firearm. Alright, I see my time is up. Thank you. Good morning. May it please the court. Lauren Biczacki for the United States. The District Court, after 5 hours of testimony, watching surveillance footage, watching body camera footage, testimony of the officers, and testimony of the defendant here, considered and rejected the same exact arguments that counsel is presenting today. Many of them factual. And I even heard counsel say that is the factual question that this court must answer. The District Court, in 6 pages of factual findings before its opinion, answered those factual questions. The best case that you're relying upon to show this was a correct stop and arrest. With respect to the reasonable suspicion analysis, that would be United States v. McAllister, which is a 2022 published opinion involving marijuana in a park. And whether there was reasonable suspicion to stop and engage with the individual. We can't use the reasonable suspicion analysis if he's under arrest, right? Your Honor, there are 3 separate approaches that this court could... But if he's under arrest, we have to ask if there's probable cause. If he's just doing a brief investigatory stop, even if he's cuffed, then we can ask about reasonable suspicion under Terry. But if he's actually under arrest, we have to have probable cause, right? Yes, and the facts show he was not actually under arrest at the time. They come out, and I know the facts are found, but we also have a video of it. So the cops are coming out of the cars, right? The sergeant who's in charge yells, go grab him. And they immediately grab him and begin to cuff him. So your position, I just want to try and understand, is that when they're grabbing and cuffing him, he's not under arrest? That is correct, and case law demonstrates that the mere act of handcuffing someone is not forbidden or is not an inappropriate practice in a Terry stop. But we also have case law saying it is also a sign of an arrest. The case law indicates you must look at all the factual circumstances. And one reason why officers may need to handcuff a person is because they are attempting to flee or have evasive movements or the presence of a firearm on the scene, all of which occurred in this case. So if we're looking at all the circumstances, and I'm just trying to understand your position, they come out, the sergeant yells, go grab him, they're immediately cuffing him, which may or may not show that he's arrested. And pretty much immediately as they start to pat him down, Sergeant Millard yells, he's in custody for gambling. Wouldn't that clarify what's going on in the situation? And indeed, I've written down when I looked at the video, Officer Kitt then asks, hey serge, he's in custody for gambling, correct? Later on they say you're having a search incident to arrest for gambling. If we're looking at all the facts and circumstances going around, doesn't it seem like everybody thinks this guy is under arrest? By the time that those arrest procedures were enacted, Sergeant Kitt had already conducted the pat-down and felt with the plaintiff. Well he hadn't done the full pat-down by the time Sergeant Millard yells, you're under arrest for gambling. So to clarify, at the 58 second mark, Sergeant Kitt says, I'm going to check you for weapons, pat you down for weapons. So that is what Sergeant Kitt is doing. Then again at the 109 mark, he says, I'm not searching you, I'm patting you down for weapons. Was he under arrest at that time? No, your honor. At which point when he's saying those things, does Sergeant Millard yell, Walker's in custody for gambling? At the 1 minute and 12 mark, Sergeant Millard yells from over a fence in which he cannot see anything, he cannot observe what is actually happening. He says, Well he already knows he's under arrest for gambling because he's the one who ordered it. He's the one who saw it, and this is maybe your best probable cause argument, he's the one who saw Mr. Walker lean in, lean out, converse, all this stuff, and then he's the one saying, go grab this guy, jean jacket. Right. He doesn't say at that point, because it's a chaotic situation. There are multiple officers. They don't have time to explain everything they saw. He does not tell Officer Kitts, he is under arrest for gambling at this moment in time. He says, go grab him. And Officer Kitts then explains that he's patting him down for safety. He comes under arrest later. Yes, Your Honor. The indicia of what transforms something from a Terry to an arrest do not occur until later. And to finalize the timeline, When does that occur? So the courts have said that you look at a number of factors. One of the factors is when someone is Mirandized, when someone is taken away in a vehicle to another location. Here we have the officer saying, we're giving you a search incident to arrest for gambling. I don't need your consent. You're under arrest. All of those things happen before Miranda. They happen before cars. There has to be some point here before a car or Miranda that this becomes an arrest. I'm trying to figure out where that point is. Those statements that you said happen after the firearm is felt. So the timeline of the yelling and the firearm, at the 1 minute 12 mark, Sergeant Millard yells over the fence, you are in custody for gambling. He doesn't say you're under arrest at that time. He says you're in custody. There are multiple types of custody. Some temporary, such as a Terry detention. Some permanent, more permanent, such as an arrest where you are taken away. Then the testimony said that when Sergeant Millard yelled this, Officer Kitts was already in the process of patting down the defendant. However, as the court points out, it was not until seconds later that he felt the bag. So the pat had started down. Then he hears Sergeant Kitts say you're in custody. Then he feels the slide of the gun through the bag. And then, it's only after that, that Sergeant Kitts asks if he is in custody for gambling and then opens up the bag to reveal the firearm. So before any sort of indicia of arrest occur, that firearm was felt during the pat down by Sergeant Kitts. Now, if the court did find that it is the probable cause analysis as opposed to the reasonable suspicion analysis that applies, I think here the probable cause analysis also comes out favorably for the government. And looking at the District Court's findings of fact with respect to this, the District Court found that under a totality of the circumstances, specifically, first, that it was a high crime area. It was known for gun violence and drug activity. And specifically, Daysha's itself, the convenience store itself was. Not the whole neighborhood. This is not a situation where the police would say anyone in this neighborhood should be searched because it's a high crime area. We acknowledge it is a totality of the circumstances and it is particularized to that location. The District Court also found that Sgt. Millard saw a group of people illegally gambling and that Sgt. Millard observed the defendant actively leaning into the dice game and conversing or talking with people in the gambling group. And the District Court found that it was reasonable for Sgt. Millard to believe that the defendant was actively participating in the gambling activity. The District Court made that credibility determination, the District Court made that factual finding, that based on all of the testimony, including the defendant's own testimony, it was reasonable to believe. The District Court also explicitly found that the defendant's testimony was not credible after the defendant was questioned by counsel. And lastly, the District Court found that the defendant yelled out, police, police, and also attempted to walk away from the police. So all of this indicated an attempt to distance himself from the police, which would further suggest he was engaged in illegal activity. So all of those factors, under the totality of the circumstances, showed that there was a substantial chance of criminal activity. The government doesn't have to show that there was an actual showing of such activity. Counsel is trying to create a higher standard than exists. But in this case, we actually do know that he was involved in the gambling because of his own statements. Now, true, it was not known to the police at that time, but it further shows that what they saw is actually what happened. There was not only a substantial chance, there was an actual showing that he was bending down, playing craps. Now, as the District Court noted, in the game of dice, it's not just the one person rolling the dice that is gambling. It's a group game. People take turns rolling the dice. So one person... You just bent down and rolled dice. Did the officer testify that that's what he saw, that hand motion? He bended down. Okay, but he did not... He did not. Another person was rolling the dice. And as the District Court noted, you do not need to be rolling the dice to be engaged in an illegal game of dice. Many people bet. Many people yell to encourage or to suggest to others how to play the game. And the District Court found that based on the observations that Sgt. Millard made, it was reasonable to believe that particularly the defendant was engaged in that criminal activity. His movements and his words were consistent with gambling. So that is enough under the totality of the circumstances for a probable cause analysis to find that a search incident to arrest on that gambling ordinance was appropriate. Can you address the jail call, too? Does that just go into the credibility of Sgt. Millard? How do we treat that? Yes, so the jail call was not known at the time of the probable cause or the reasonable suspicion. So it does indeed both go to credibility as well as proving what we don't need to prove, which was that he actually was engaged in gambling. He was actively involved. He was speaking with the group. And he admits that. And so really there's no question. This is not a situation, wrong place, wrong time, of an innocent person buying cheese. He could have innocently bought the cheese and then on his way out, also not so innocently, been actively involved in the gambling. Beyond the probable cause analysis and reasonable suspicion analysis, even if this court were to find that the district court incorrectly held on both of those grounds, the district court also made findings and a conclusion with respect to inevitable discovery. And the nature of the inevitable discovery doctrine is hypothetical. So there was questions asked about whether the police did know at that time that he was a parolee. And the answer is no, they did not. However, the inevitable discovery doctrine allows us to extrapolate if there were no, if this court found that there was no probable cause search and no reasonable suspicion pat down. Even if the court found that those were improper under the Fourth Amendment, would that same evidence have been discovered through another means? And the testimony at the suppression hearing indicated that it is standard practice, and the case law supports this as well, it's standard practice for someone to ask for identification and run that information in the lien database. And we understand the practice to do that even if there's no reasonable suspicion or probable cause if you just walk up to someone on the street is typical to just ask for ID and run a warrant check? You would need reasonable suspicion for the Terry stop itself, but you do not need to go into the Terry pat down reasonable suspicion analysis. I don't think there's any credible basis to argue that there was not at least reasonable suspicion that he was involved in the gambling, a lower standard than probable cause. So at that point, the officers had enough for a Terry stop. And then the lien database would show information regarding his parole status and the active warrants, things of that nature. And at that point, it would have been discovered that indeed he had an arrest warrant related to a parole violation and was a parolee with a search condition. So under either of those two options from the lien database, the firearm would have been inevitably discovered when they searched him. Incident to that arrest for his violation or incident to the search term. I see my time is elapsing. Are there any further questions from the court that I've not addressed? For these reasons, Your Honor, under either a probable cause standard, reasonable suspicion standard, or inevitable discovery, under all three of those, there was no fourth amendment violation. The firearm should not be suppressed. The court combined need only find one means of affirming the district court's conclusion and all three of those doors, all three of those options support admission of the firearm in this case. Thank you. Thank you. Your Honor, just to clarify the timeline, this is a very key moment as Your Honor's questions elucidated. In terms of what Sgt. Millard had said by the time Officer Kitts had felt the bag, it is indisputable from the timeline of Officer Yeager's video that Officer Kitts was patting down Mr. Walker but had not yet touched the bag which was still on the front of Mr. Walker's body by the time Sgt. Millard yelled, you're in custody for gambling, so stop. You're in custody for gambling. Before that time, before he yelled, was that a Terry stop and Terry frisk at that time? Again, this is right before the yell. No, Your Honor, because Officer Kitts, who was effectuating the stop, had absolutely zero independent basis to know who to grab or what Mr. Walker had or hadn't done, other than at the moment that Sgt. Millard radios, grab jean jacket, man satchel, is when officers wrangle Mr. Walker back in front of the store and grab him. There was absolutely no independent basis to grab him, other than Sgt. Millard's command, and he was the one deciding who to grab. As for a rebuttal of the government's points, there is absolutely no evidence in the video or in the testimony at the hearing that Mr. Walker was rolling the dice. There's absolutely no evidence that he was bending down in a dice-like rolling motion. The only evidence is that he leaned in and leaned out of the group. Mr. Walker testified that he himself is 6'4", and these people were obviously gambling on the street, as they do often in that area, and that they were bending over, rolling down. That he could see and hear them as he was walking past them to get to the fence, to see if his girlfriend had left her apartment yet to come and pick him up, so that he would not have to walk by the officer. So he's walking past the group, at which point, leaning in and leaning out is so ambiguous. Does that give the officers possible cause that he's participating? Maybe. Does it give them probable cause to arrest him for gambling? No, it doesn't. The judge did not find Mr. Walker's testimony overall to be not credible. That was specifically related to when Mr. Walker said, he said, roll it up or throw a 10 to no one in particular, which he meant to no individual person by name and face. The judge interpreted that to mean he was just randomly shouting that in the parking lot. I think there was a misinterpretation there, but she did not find his testimony overall to be not credible. Did Walker think that he saw the defendant rolling dice or making motions like he was shooting dice? Did Sergeant Millard think that? Not that he testified to, no. There was no testimony whatsoever that he was rolling dice, and Mr. Walker's testimony accounted for all the money that was in his bag. Our best case for comparison on the probable cause standard is the Ingrao case, as well as Harris v. Bornhorst, which talks about mere suspicion for probable cause is not enough. Thank you, Honors. Thank you, Counselor. Thank you for your arguments and your briefs, and I appreciate your service as CJA Counselor. Your case will be submitted.